WELSH, Respondent, vs. MULLIGAN and another, Defendants: SMITH, Appellant.*

*October 14—November 18, 1947.*

* Motion for rehearing denied, with $25 costs, on January 13, 1948.

The cause was submitted for the appellant on the brief of *Elizabeth Hawkes* of Washburn, and for the respondent on the brief of *Norlin & Spears* of Washburn.

FAIRCHILD, J. The strength of a tax deed depends upon whether all the requirements of law governing a sale of real property for taxes have been fully complied with. If any act required by law, such as a proper notice of the application for tax deed by a completed service thereof on the owner, is omitted, the tax deed is not valid. It has been recognized as a valid rule that statutes authorizing and regulating tax sales must be construed for the benefit of the owner. In *Klug v. Soldner*, 228 Wis. 348, 351, 280 N. W. 350, it was said: "The statute relating to notice should be construed liberally in favor of the owner because provision for notice is for his benefit and protection."

In this case the acts of the respondent in his efforts to acquire the title to the land did not conform to the requirements of the statutes because of his failure to serve the notice as

provided for in sec. 75.12, Stats. 1945, at least three months before the deed was executed. There are several objections based on the irregularity of the process followed by respondent. The controlling one is that he executed the required affidavit of inability to secure service on the very day he received the deed. That prevented him from acquiring title. For this reason the action to quiet title must fail, and we do not enter on a discussion of the apparent lack of formality or the several failures that otherwise would be for consideration.

The respondent's notice to Moore, even if it be conceded that Moore was an occupant of the premises as defined in sec. 75.12 (1), Stats. 1945, did not relieve the respondent from giving proper notice to the owner. Prior to 1943, the statutes provided that one who intended to apply for a tax deed was to serve a written notice upon the owner *or* occupant. By ch. 250, Laws of 1943, the former sec. 75.12, Stats., was repealed and a new one adopted. The newly created sec. 75.12 did not provide for notice to the owner or the occupant in the alternative. Sub. (1), of the new 75.12, set forth above, clearly says that no tax deed shall be issued unless notice of the application for a tax deed is served on the owner. That same subsection provides that under certain conditions notice of application for tax deed shall be served upon the occupant. The section does not say that in the event that one of those notices is in order, the other need not be served.

Accordingly, before he could get a valid tax deed, the respondent was bound to serve written notice of his application for a tax deed upon appellant. He has not satisfied the statutory requirements in regard to the notice. Sub. (3), of sec. 75.12, Stats. 1945, says that such notice shall be served in the manner of a summons in a court of record *or* by registered mail with return receipt of the addressee demanded *or,* "In the event that such notice cannot be given by use of either of the foregoing methods, the owner and holder of said tax sale certificate or his authorized agent shall make an affidavit set-

ting forth the effort to make such service, the inability to do so, and shall file such affidavit with the county clerk. . . . In such cases the notice hereinabove provided shall be published by such owner' and holder once a week for three successive weeks. . . ."

Claiming that he was unable to serve appellant personally or to reach him by registered mail, the respondent chose to comply as to notice by filing the affidavit of his inability to secure service personally or by registered mail and by a newspaper publication of the notice. The notices were published for three successive weeks in July, 1945, but the affidavit was not executed until November 2, 1945, the day the tax deed was delivered to the respondent. Respondent contends that the date on which the affidavit was filed is immaterial, so long as it was filed before the tax deed was executed in his favor. The appellant, on the other hand, contends that the affidavit should be filed prior to the newspaper publication of the notice. The trial court, although not specifically mentioning the affidavit as such, was of the opinion that "the failure to make and file notice of intent to take tax deed prior to the first day of publication is not fatal to the proceedings."

The statute does not specifically say when the affidavit of inability to secure service must be filed, but there are several things which indicate that it was the intent of the legislature that the affidavit should be filed *before* the publication. Sec. 75.12 (3), Stats. 1945, mentions the affidavit first and then the publication. It is only in those cases where an affidavit of inability to secure service is filed that publication of the notice of application for tax deed is necessary. Prior to 1945 this provision now in sec. 75.12 (3) read: "Thereupon [referring to the filing of the affidavit of inability to secure service] the notice hereinabove provided shall be published." See sec. 75.12 (3), Stats. 1943, and words to the same effect in sec. 75.12 (1), Stats. 1941. The word, "thereupon," was changed to the phrase, "in such cases," by sec. 7, ch. 574,

Laws of 1943. That chapter is captioned, "An act to correct errors and to clarify the language of certain acts of the 1943 session of the legislature." There is no apparent intention to change or alter the relationship between the affidavit of inability to secure service and the newspaper publication of the notice of application for tax deed.

Considering the last sentence of sec. 75.12 (3), Stats. 1945, with the first sentence of sub. (2) of that same section, there is further reason for holding that the filing of the affidavit on November 2d, the day the tax deed was executed, was not timely. The last sentence of sub. (3) provides that the affidavit together with proof of publication of the notice shall be deemed completed service of the notice of application for tax deed. The first sentence of sub. (2) sets forth what that notice should contain. Among other things, it should "give notice that after the expiration of three months from the date of service of such notice a tax deed will be applied for. . . ." The service of such notice certainly is not complete without the affidavit, according to sub. (3), and the tax deed is not to be applied for until three months after the service, according to sub. (2).

These provisions of the statutes and the general principle that notice requirements are to be interpreted in favor of the owner of property compel us to conclude that respondent's failure to file his affidavit of inability to secure service prior to the first day of publication in July, 1945, was fatal to the proceedings.

There may be room for argument that filing that affidavit before the publication would not have increased the opportunities for appellant to redeem the property. The trial court's opinion was expressed this way: "I have reconsidered very carefully, as I think, the evidence bearing upon the question of whether the plaintiff was aware of, or should have been able to find out where the defendants resided so as to serve notice of taking of tax deed on them personally. I have concluded

that he did not know where the defendants were located, that he did use reasonable efforts to find out, and that therefore his service by publication upon the defendants was adequate service." However, an owner, finding no affidavit of inability to secure service on file, might rely on his having at least three more months in which to redeem. It is the obvious intention of sec. 75.12 (3), Stats. 1945, that diligent search for the owner should be made before the publication of notice. Were the affidavit not to precede the publication, and could it be executed at any time, one who applied for a tax deed need not make a search for the owner until a few days before the tax deed is to be executed, and that is not the intent of the provision which requires notice that after the expiration of three months from the date of the completed service of such notice a tax deed will be applied for.

Again, it is questionable whether the respondent should have executed the affidavit he did on November 2, 1945. That affidavit read as follows:

"Walter F. Welsh, being first duly sworn, on oath says that he is the owner and holder . . . of the tax sale certificate described in the annexed notice of application for issue of tax deed.

"That he is unable to make service of said notice personally or by registered mail upon Patrick Mulligan and Andrew J. Smith.

"That affiant has made the following effort to make such service, to wit:

"Record search does not reveal address.

"Also made personal inquiry and was unable to find either party."

At the time when respondent made this affidavit of thorough search for and inability to find the appellant, the letters from appellant's attorney, referred to in the statement of facts, were in the office of the county treasurer. While to have the practical as well as the legal purpose carried out the affidavit ought to precede the publication, if that point is passed the service

could still not be complete until the affidavit was filed. And a deed issued before the expiration of three months after completed service would be a nullity, for that is an irregularity which goes to the merits.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the complaint.