CARROLL, Appellant, vs. RICHLAND COUNTY and others, Respondents.

*April 2—May 5, 1953.*

For the appellant there was a brief by *Brindley & Brewer* and *James G. Robb,* all of Richland Center, and oral argument by *Mr. Robb.*

For the respondents there was a brief by *George A. Hardy,* district attorney, and *Leo P. Lownik,* special counsel, and oral argument by *Mr. Lownik.*

*G. N. Fowell* of Richland Center, for the respondents Neary.

BROWN, J. In 1933 Mary Carroll, the grantee named in a deed conveying the realty in question, recorded her deed in the office of the register of deeds of Richland county. That was the last transfer of record before the tax proceedings which are now complained of. Mary Carroll died intestate on January 8, 1948, leaving several heirs at law, one of whom is the plaintiff. No probate proceedings were had. At the time of her death taxes on her land were in default and the tax certificates were held by Richland county. On October 11, 1950, the county served on the plaintiff, who was then the occupant of the land, a notice of application for a tax deed. No other notice was served or published. On May 24, 1951, pursuant to the notice, the county took a tax deed and on May 29, 1951, leased the land to the plaintiff. The lease recited that the property was owned by the county, it was signed by plaintiff, and plaintiff paid the rent. Tenure was stated to be from June 1, 1951, to March 1, 1952. The county then offered to sell the property to the highest bidder and the defendants Edward and Mary Neary made the highest bids. On October 30, 1951, they and the county entered into an agreement of sale pursuant to which on January 26, 1952, the county gave the Nearys a quitclaim deed in consideration of $3,700. In November, 1951, plaintiff consulted an attorney and was informed that the tax deed might be invalid for failure on the part of the county to serve the notice of application for a tax deed as provided by statute. During January,

1952, he acquired the interests of the other heirs at law of Mary Carroll and on February 6, 1952, he commenced this action to set aside the tax deed. He was still in possession of the farm when the case was tried.

Sec. 75.12, Stats., dictates the procedure to be followed when land is sold for the nonpayment of taxes. So far as is material to this case, the statute provides that no tax deed shall be issued unless a written notice of application for tax deed shall have been served upon the owner or one of the owners of record in the office of register of deeds of the county wherein the land is situated. The contents of the notice are specified and the manner of service upon such owner of record. Then sub. (3)—

". . . In the event that such notice cannot be given by use of either of the foregoing methods, the owner and holder of said tax sale certificate . . . shall make an affidavit setting forth the effort to make such service, the inability to do so, and shall file such affidavit with the county clerk. . . . In such cases the notice hereinabove provided shall be published by such owner and holder once a week for three successive weeks in a newspaper of general circulation published in the county wherein such lands are located. . . . The affidavit of the owner and holder of the tax sale certificate as to inability to secure service personally or by registered mail, together with proof of publication of the notice, shall be deemed completed service of the notice of application for tax deed."

When the time came at which application for a tax deed might be made there was no living owner of record in the office of the register of deeds so no notice of the application for the deed could be given either personally or by registered mail upon any owner of record. In such case the statute provides an alternative,—namely, an affidavit of inability to make such service, filed with the county clerk, followed by publication for three weeks in a newspaper of general circulation in the county. The language of the statute is clear

and there can be no uncertainty concerning the requirements to be met before a tax deed can be issued. It is conceded that no notice was served upon an owner of record nor was there any publication. There was personal service of notice upon one who had become an owner by virtue of sec. 237.01, Stats. (descent of lands), but who had no title of record. The question to be decided is whether such service is just as good as that declared necessary by sec. 75.12.

It may be argued very persuasively that the legislature cared only that at least one owner received notice of pending proceedings so that he had opportunity to redeem his property if he cared to do so and the procedure provided by the statute is to guide and protect the applicant for the tax deed in case of doubt concerning actual ownership or the whereabouts of the owner, but such procedure is not meant to set up technical obstacles whereby constructive notice has greater force and effect than notice personally served upon the person whom the legislature wants notified. Nevertheless, the statute is so explicit that there can be no room for construction. It says no tax deed shall issue unless certain things are done which were not done here.

"The strength of a tax deed depends upon whether all the requirements of law governing a sale of real property for taxes has been fully complied with. If any act required by law, such as a proper notice of the application for tax deed by a completed service thereof on the owner, is omitted, the tax deed is not valid. It has been recognized as a valid rule that statutes authorizing and regulating tax sales must be construed for the benefit of the owner." *Welsh v. Mulligan* (1947), 251 Wis. 412, 416, 29 N. W. (2d) 736.

We consider we would be required to declare the deed void at the demand of any of the heirs at law of Mary Carroll other than the present plaintiff, but their interests have been acquired by him. As to him, he acquiesced in the sale and thereafter executed a lease in which he stated that the land

was owned by the county,—the purchaser at the tax sale. With the plaintiff in possession under the lease and recognizing the county's title by the payment of rent, the defendants Neary contracted to buy the premises from the county and subsequently did so. The record shows no opposition by plaintiff to this transaction. Rights of third parties have intervened and under the circumstances we consider that plaintiff is estopped now to assert that the tax sale was contrary to statute and the tax deed void.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting in part*). While I concur with the result reached in the majority opinion, I cannot agree with that part thereof which states that the personal service of the written notice of the application for the tax deed on the plaintiff was not binding upon the other co-owners (his brother, sister, nephews, and nieces, constituting the heirs at law of Mary Carroll).

The learned trial court has stated my own views on this issue so well in his memorandum opinion that I avail myself of the privilege of quoting therefrom as follows:

"The purpose of the notice is to notify the real owner or owners of the attempted proceedings to get title to the land for nonpayment of taxes. The statute should not be construed so as to lead to a ridiculous result. It is claimed that because notice could not be served on Mary Carroll, deceased, that it became incumbent upon the county to serve the notice by publication of the same. Now, concededly, the purpose of publication is to give an owner notice. The argument of counsel is that actual written notice to an owner is insufficient if, perchance, such owner has not recorded his deed and, hence, is not the owner of record but that publication of notice in some paper would give the necessary notice. We think such reasoning is specious. The statute must be given a common-sense interpretation.

"This provision of the statute, it seems to the court, was inserted so that a county, or other person holding tax cer-

tificate, would not be rendered helpless if the owner was unknown or there was a dispute as to ownership. Hence the provision that it might be served on the owner of record in the register of deeds' office. The purpose of it was undoubtedly to give notice to the actual owner or one of them. Would it not be rather ludicrous to hold that notwithstanding this actual notice to one of the owners and the occupant which had been given that yet it was necessary to publish the notice in the hope perchance that he would see it and thus have notice of the application? The law is for all cases. The owner might well be a sole owner and it seems to the court that it is killing the spirit and magnifying the letter of the law to say that notwithstanding that proper written notice is served upon the admittedly legal owner that still, because he is not the owner of record, there must be publication.

"Plaintiff contends that the statute must be literally complied with. A strict construction means, as it seems to the court, that the construction must be such as to preserve every substantial right of the taxpayer as against the tax-collecting authority. It does not mean necessarily a literal construction, if it leads to a result that is ridiculous and preserves no real rights of the taxpayer that are not otherwise preserved to him."

Sec. 75.12 (1), Stats. 1949, requires service on *only one* of the owners of record. Therefore, in the instant case, if any one of the heirs at law of Mary Carroll had gone into county court and obtained a certificate of heirship and recorded a certified copy in the office of the register of deeds, there would be no question about the county's personal service of written notice on the plaintiff P. K. Carroll being binding on the other co-owners. To me it seems absurd that failure to procure or record such certificate of heirship would prevent the service on P. K. Carroll, as one of the actual owners, from being binding upon the other co-owners.